NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

NO. 04-4763

UNITED STATES OF AMERICA

v.

ROBERT RAY REICHARD,
Appellant

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Crim. Action No. 03-cr-00042)
District Judge:  Hon. Sean J. McLaughlin

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 19, 2005

BEFORE:  SMITH, STAPLETON and NYGAARD, Circuit Judges

(Opinion Filed:  October 27, 2005)

OPINION OF THE COURT

STAPLETON, Circuit Judge:

In the spring of 2003, defendant-appellant Robert Ray Reichard ("Reichard") began a two-week romantic affair with Teresa Lovin ("Lovin"). After the affair, Lovin resumed a relationship with Raymond Kotomski ("Kotomski"). Reichard began to send threatening letters anonymously to Lovin and Kotomski. In October 2002, he entered Kotomski's house and took several items, including personal papers belonging to Lovin. He also spray painted the words "Get out Bitch" on the side of Lovin's car.

In November 2003, Reichard mailed a suspicious package to Kotomski. Kotomski did not open the package and took it to the state police barracks. The Erie, Pennsylvania, bomb squad x-rayed the package, concluded it contained a dangerous device, and disarmed it using a water cannon.

Kotomski informed the police that he and Lovin had been receiving threatening anonymous communications. When confronted, Reichard confessed to mailing the package to Kotomski. He explained to the police how he made the device in the package and how he left the package in a mailbox in Hubbard, Pennsylvania, addressed to Kotomski. The package consisted of a mousetrap, a series of matches, a match strike plate, explosive powder, and a string that protruded from the package. The contents were arranged such that if the string were disrupted by the opening of the package, it would release the mousetrap, causing the matches to strike the plate, and thereby igniting the powder.

Reichard pled guilty to one count of manufacturing a "firearm" in violation of 26 U.S.C. § 5861. Pursuant to the plea agreement, the parties stipulated to application of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). The parties agreed that "[t]he facts relevant to sentencing shall be determined initially by the United States Probation Office and finally by the United States District Court." App. at 72. The parties also agreed as follows with respect to application of the Guidelines:

> 2. The parties stipulate that pursuant to 18 U.S.S.G. § 2K2.1(a)(5), the base offense level for the defendant's conduct is 18. Pursuant to U.S.S.G. § 2K2.1(b)(3), the parties stipulate that the offense level is increased by 2 levels to 20 because the offense involved a destructive device. The parties further stipulate that pursuant to U.S.S.G. § 2K2.1(b)(5), the offense level is further increased 4 levels to level 24 because the defendant used and possessed the destructive device in connection with another felony offense.
> . . .
>
> 4. [sic] The parties retain their right to advocate their position with respect to any upward or downward departure that may be appropriate at the time of sentencing.

App. at 74-75.

The defendant's base offense level is determined by reference to § 2K2.1(a)(5) of the Guidelines. That section, entitled "Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition," provides an offense level of 18 if the offense "involved a firearm described in 26 U.S.C. § 5845(a)." The PSR and plea agreement specified that a two-level enhancement applied because the particular "firearm" manufactured was a "destructive device." U.S.S.G. § 2K2.1(b)(3). In addition, a four-level enhancement

3

applied because the defendant possessed a "firearm" in connection with another felony offense; namely, the defendant's harassment, stalking, and sending of threatening communications to Kotomski and Lovin. U.S.S.G. § 2K2.1(b)(5).

The PSR and plea agreement also provided for Reichard's offense level to be reduced by two levels due to acceptance of responsibility and another level due to Reichard's timely notification of the authorities of his intention to enter a plea of guilty. U.S.S.G. § 3E1.1(a) and (b). Therefore, Reichard's adjusted offense level was 21. Because Reichard's criminal history category was I, this resulted in a Guidelines range of 37 to 46 months in prison. These calculations were not in dispute at sentencing and are not in dispute on appeal.

The government moved for an upward departure. The government argued that Reichard's case was outside the heartland of cases contemplated by the Guidelines in § 2K2.1 for three reasons: 1) Reichard actually used the device; 2) Reichard intended to use the device to carry out his threat to the victim; 3) by placement in the mail, Reichard's device posed a significant risk of serious bodily injury to others. Reichard responded that the Guidelines already accounted for these facts.

The District Court accepted the government's argument and granted its motion. In the course of concluding that Reichard's case was outside the heartland, it noted the following:

- "[T]he device itself was fully capable of inflicting serious bodily injury or harm." App. at 310.

- "[T]he actual mailing of this device followed a long period of harassment and st[al]king of the victim." Id. at 310-11.

- "[T]he defendant lost all control of the destructive device once he placed it in the mail. This is not a situation, in my view, like a firearm where the perpetrator can decide at any instant whether or not he will pull the trigger. Here, in short, I find that the evidence reveals that the defendant intentionally played Russian roulette with the health and safety of any member of the public that came in contact with the package. And the evidence here shows that there were many." Id. at 311.

- "[T]he destructive device manufactured by the defendant was more than capable of having been triggered inadvertently at any number of points on its long journey from having been dropped off in the mailbox to its ultimate designation." Id.

- "[T]he statistical evidence put forward at this hearing demonstrates conclusively that the placing of incendiary devices, such as the device that was placed in the mail in this case, in the entire United States is an extremely rare occurrence and, in fact, in some years there is no record of it having occurred at all." Id. at 311-12.

The District Court looked to analogous Guideline provisions to determine the appropriate extent of departure and concluded that an increase of four offense levels was appropriate. After the four-level increase, Reichard was left with a total offense level of 25, which along with a criminal history category of I, resulted in a guideline range of 57 to 71 months. The District Court sentenced Reichard to 60 months in prison.

In this timely appeal, Reichard challenges only the District Court's decision to depart upward and its determination of the extent of the departure.

The parties agree that we review the District Court's decision with respect to the extent of the departure for an abuse of discretion. They differ on whether we must review

5

the decision to depart *de novo* or for an abuse of discretion. We need not resolve this controversy, however, because we conclude that the departure decision must be sustained under either standard.

Reichard insists that the District Court erred when it departed upwards because the factors supporting the departure were already accounted for in the Guidelines calculation. We are unpersuaded. As this Court explained in United States v. Iannone, 184 F.3d 214, 226 (3d Cir. 1999):

> The Commission conceives of each offense guideline as "carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." In the unusual case in which a defendant's conduct falls outside the typical 'heartland,' the court may consider a departure from the Guidelines sentence. Section 5K2.0 provides that a court may impose a sentence outside the applicable guideline range "if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'"

Id. at 226 (citations omitted).

The Supreme Court in Koon v. United States, 518 U.S. 81 (1996), specified a methodology courts should follow in evaluating whether a departure is appropriate. This court explained that methodology in Iannone:

> First, identify the factor or factors that potentially take the case outside the Guidelines' "heartland" and make it special or unusual. Second, determine whether the Guidelines forbid departures based on the factor, encourage departures based on the factor, or do not mention the factor at all. Third, apply the appropriate rule: (1) if the factor is forbidden, the court cannot use it as a basis for departure; (2) if the factor is encouraged, the court is authorized to depart if the applicable guideline does not already take it into

>account; (3) if the factor is discouraged, or encouraged but already taken into account by the applicable guideline, the court should depart only if the factor is present to an exceptional degree, or in some other way makes the case different from the ordinary case in which the factor is present; or (4) if the factor is unmentioned, "the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether [the factor] is sufficient to take the case out of the Guideline's heartland."

184 F.3d at 226 (citations and footnote omitted).

Reichard pled guilty to making a "firearm" in violation of 26 U.S.C. § 5861(a) through (l). The U.S.S.G. section applicable to that offense is § 2K2.1. That section applies only to criminal activities involving the making, importing, possessing, selling, transferring and theft, etc., of firearms under specified circumstances. U.S.S.G. App. A. Reichard's base offense level of 24 thus takes into account the fact that Reichard made a firearm, the fact that that firearm was a destructive device (*i.e.*, a bomb), and the fact that he made and possessed that device in connection with a felony; namely, the harassment, threatening and stalking of Lovin and Kotomski. It does not take into account what Reichard did once he had manufactured the bomb; namely, place the bomb in the mail in a manner that (a) was designed to place it directly into the hands of the intended victim, and (b) would, during its mail transit, create a high risk of serious personal injury to many innocent people.

While Reichard is correct in stressing that a "destructive device" by definition is capable of causing bodily injury, there is a material difference between creating such a device and, after creating it, actually employing it in a manner that will create a

substantial risk of serious bodily injury not only to the intended victim but to countless others as well.

The Guidelines encourage departure in situations of this kind. First, § 5K2.14 provides:

> If national security, public health, or safety was significantly endangered, the court may depart upward to reflect the nature and circumstances of the offense.

U.S.S.G. § 5K2.14. In addition, Application Note 5 to section 1B1.3 provides:

> In a case in which creation of risk is not adequately taken into account by the applicable offense guideline, an upward departure may be warranted.

U.S.S.G. § 1B1.3, Application Note 5. Finally, and most importantly, the commentary to the Guideline under which Reichard was sentenced, §2K2.1, provides:

> Offenses involving [destructive] devices cover a wide range of offense conduct and involve different degrees of risk to the public welfare depending on the type of destructive device involved and the <u>location or manner in which that destructive device was possessed or transported</u>. For example, a pipe bomb in a populated train station creates a substantially greater risk to the public welfare, and a substantially greater risk of death or serious bodily injury, than an incendiary device in an isolated area. In a case in which the cumulative result of the increased base offense level and the enhancement under subsection (b)(3) does not adequately capture the seriousness of the offense because of the type of destructive device involved, <u>the risk to the public welfare, or the risk of death or serious bodily injury that the destructive device created, an upward departure may be warranted.</u>

U.S.S.G. § 2K2.1, Application Note 8 (emphasis added).[1]

---

[1] Reichard also argues that this basis for departure is unsupported by the record. He relies on a witness for the government who testified that the string on the outside of the package would have to be cut in order for the device to detonate. Reichard emphasizes

In short, the fact that the device was dangerous, in and of itself, does not justify departure because the dangerousness of the device was already accounted for by the two-level enhancement for use of a "destructive device." But the factor nonetheless informs the analysis of the creation of a risk of harm for the general public. The creation of a substantial risk of serious bodily injury to the general public was not adequately accounted for in the Guidelines and justifies an upwards departure.

We further conclude that the District Court did not abuse its discretion when it departed upwards four levels. As district courts are generally required to do, the District

---

that the witness failed to state that the cutting of the string could happen easily. But examination of the record in context reveals that the witness testified that the string could have been cut in transit:

> THE COURT: With your understanding as to how this device was put together, do you have an opinion as to whether there was any risk of ignition or detonation while it was in transit between its original mailing point and where it was intended to go?
>
> THE WITNESS: Yes, that would have been possible.
>
> THE COURT: What would be the risk and what would be the mechanism from that instance that, in your opinion, would have been able to trigger the device?
>
> THE WITNESS: Really would have to either be the string itself be cut somewhere in transport or where the string attaches to the bale, where it was holding it back the bale. Either way the mousetrap had to spring forward.

App. at 200-01. It was not clear error for the District Court to infer from this and other testimony that there was a substantial risk of harm to the general public that came into the vicinity of the package as it made its way through the postal system.

Court analogized to existing Guideline provisions in determining the appropriate extent of its departure. See Iannone, 184 F.3d at 229. The Court looked to three provisions it viewed as analogous. First, the Court observed that under § 3C1.2, an adjustment applicable to a wide variety of offenses, if the defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer," the Court should increase the offense level by two levels. U.S.S.G. § 3C1.2. Second, the Court observed that the Guidelines provision governing stalking and domestic violence offenses calls for a four-level increase in offense level if the offense involved both "possession, or threatened use, of a dangerous weapon" and "a pattern of activity involving stalking, threatening, harassing, or assaulting" the victim. U.S.S.G. § 2A6.2. Finally, the Court considered that the Guidelines provision governing robbery requires a six-level increase in offense level if a firearm is used, but not discharged, in the course of an offense. U.S.S.G. § 2B3.1(b)(2). The three analogous provisions call for enhancements of two to six offense levels; the Court chose the middle of that range and enhanced Reichard's offense level by four.

     While §§ 2A6.2 and 2B3.1(b)(2) are not a close fit, they are at least analogous to the extent they are designed to punish defendants whose conduct creates a greater risk of harm to others. The robbery provision implicates that concern because it raises the offense level for mere use of a firearm, even if the firearm is not discharged. The stalking enhancement is similarly relevant in that it addresses the concomitant increase in risk to

others that stems from the mere prospect of use of a weapon in concert with stalking or harassment. The two-level enhancement under § 3C1.2 for creation of a risk to others in the course of fleeing a law enforcement officer is more clearly analogous because it squarely addresses Reichard's creation of a risk to others.[2]

In addition to the Guideline provisions cited by the District Court, we may look to other provisions to justify the extent of the departure. In Iannone, this Court supplied its own analogous Guidelines provision to justify the extent of the District Court's departure because the District Court had failed to articulate analogous Guidelines provisions at sentencing. 184 F.3d at 229.

The government points to § 2D1.1(b)(6)(B), which calls for a three-level increase in offense level when a methamphetamine defendant's offense "created a substantial risk of harm to . . . human life." In addition, the government cites to § 2K1.4, which provides a base offense level of 24 for arson offenses in which the defendant _knowingly_ "created a substantial risk of death or seriously bodily injury to any person other than a participant in the offense," but an offense level of 20 for arson offenses in which the defendant _unknowingly_ "created a substantial risk of death or serious bodily injury to any person other than a participant in the offense." U.S.S.G. §§ 2K1.4(a)(1) and (2). We agree with the government that these are helpful analogies.

---

[2]Reichard argues that the provision is not analogous because "there was no flight–not from a law enforcement officer or any one else." Br. Appellant at 36. But this misses the point. The District Court did not apply this enhancement directly to Reichard, but invoked it by analogy because it concerns the creation of a risk to others.

Thus, the analogous Guidelines provisions show increases in offense level between two and six when the defendant's conduct increases the risk of harm to others. The District Court increased Reichard's offense level by four levels. This was within its discretion.

The judgment of the District Court will be affirmed.